**ATLANTA INTERNATIONAL
INSURANCE COMPANY,**
**Plaintiff–Appellee,**

v.

**YELLOW CAB COMPANY, INC.,**
**Defendant–Appellant.**

**No. 91–1610.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1991.

Decided May 5, 1992.

Rehearing Denied June 26, 1992.

Motion to Stay Mandate and Vacate
Denial of Petition for Rehearing
Denied Aug. 11, 1992.

Robert M. Chemers, Scott O. Reed and Robert J. Franco (argued), Pretzel & Stouffer, Chicago, Ill., for plaintiff-appellee.

Alvin R. Becker (argued) and Joel M. Horwich, Beerman, Swerdlove, Woloshin, Barezky & Berkson, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr.* and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.**

CUDAHY, Circuit Judge.

Atlanta International Insurance Company (Atlanta) brought this diversity action against Yellow Cab Company, Inc. (Yellow) seeking a declaration of the rights of the parties under an excess insurance policy issued to Yellow by Atlanta. Atlanta claims that it has no duty to provide excess coverage to Yellow for a judgment obtained against Yellow by one Edward Watson because Yellow breached the notice provision of the policy. The district court agreed and granted summary judgment for Atlanta. We affirm.

I.

Yellow is covered for liability up to $400,-000 under two policies issued by American Country Insurance Company (American). Yellow's policy with Atlanta provides coverage for claims exceeding the $400,000

---

* Judge Harlington Wood, Jr., assumed senior status on January 16, 1992, after this case was argued before the court.

** Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

limit of the combined American policies. The excess insurance policy issued by Atlanta contains the following provision regarding notice:

> The insured shall immediately advise the Company of any accident or occurrence which appears likely to result in liability under this Policy and of subsequent developments likely to affect the Company's liability hereunder.

While these policies were in effect, one of Yellow's cabs was involved in a collision with a motorcycle driven by Edward Watson, who sustained serious injuries to his left leg. Yellow immediately notified American, which undertook an apparently thorough investigation of the accident. Four months later, Watson filed a lawsuit against both the cab driver and Yellow seeking $500,000 in damages. Despite the amount of the *ad damnum*, Yellow and American concluded that Yellow's liability to Watson would not penetrate the excess insurance layer provided by Atlanta. Therefore, Yellow did not notify Atlanta of either the accident or the filing of the lawsuit.

Prior to and during the course of the trial, Watson offered several times to settle the case for less than $400,000, but American (which controlled the case under the terms of Yellow's policy) refused. The jury returned a verdict in favor of Watson for just over $700,000. Yellow paid the excess over $400,000, then notified Atlanta and requested reimbursement. Atlanta refused on the ground that Yellow had breached the notice condition of the policy and brought this action seeking a declaratory judgment to that effect.

The district court found that Watson's complaint asking for $500,000 in damages "informed Yellow that there was a sufficient likelihood of penetration of the excess coverage to require notification of Atlanta." Slip op. at 6, 1991 WL 4428. Yellow's failure to notify Atlanta upon receipt of the complaint thus constituted a breach of the policy's notice provision. The district court also found no factual dispute that Atlanta had been prejudiced by the late notice be-cause it had been unable to take advantage of opportunities to settle the case for an amount well under the limits of the primary coverage. Accordingly, the court granted summary judgment in favor of Atlanta.

■ We review the district court's grant of summary judgment *de novo*. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991). Summary judgment is appropriate only if, taking all facts in the light most favorable to the nonmoving party, we conclude that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990).

## II.

■ No Illinois court has specifically addressed the question whether an *ad damnum* amount exceeding an insured's primary coverage requires the insured to notify its excess insurer under an "appears likely" notification provision.[1] However, Yellow contends that a recent Illinois appellate decision, *Atlanta Int'l Ins. Co. v. Checker Taxi*, 214 Ill.App.3d 440, 158 Ill. Dec. 228, 574 N.E.2d 22 (1991), is sufficiently close to be dispositive of this case. We examine that decision in some detail.

The facts of *Checker Taxi* are, up to a point, quite similar to those of the case at bar. Checker Taxi Company, Inc. (Checker) had a policy of excess insurance with Atlanta (the same Atlanta as in this case), which covered Checker for liability over $400,000. The policy contained a notice provision identical to the one at issue here. During the period covered by this policy, one of Checker's cab drivers was involved in an accident in which a mother of two young children was killed. Checker notified its primary insurance carrier, which investigated the accident and concluded that Checker's driver had probably not been at fault. Based on that conclusion, Checker decided not to notify Atlanta of the accident. Three weeks after the accident, the decedent's estate filed a wrongful

---

**1.** The parties agree that Illinois law governs this case.

death action against Checker, seeking damages in excess of the jurisdictional minimum of $15,000. Checker did not notify Atlanta of the suit until almost two years later, following a pre-trial conference at which the plaintiff's attorneys presented a settlement demand of $1.5 million. Atlanta filed a declaratory judgment action against Checker seeking a determination that it had no duty to cover any excess losses arising out of the accident because Checker had breached the notice provision. The appellate court reversed the trial court's grant of summary judgment for the insurer, finding that Checker's notice was timely under the policy.

According to Yellow, *Checker Taxi* holds that when an excess insurance policy requires notice to the insurer only when it "appears likely" to the insured that an occurrence will implicate the excess coverage, the "appearance of likeliness" is measured solely by the excess insured's investigation and evaluation of the claim. That evaluation, if reasonable, will be conclusive on the insurer. Further, Yellow argues, the facts of *Checker Taxi* are so close to the facts of this case that we must find Yellow's evaluation of Watson's claim to have been reasonable as a matter of law.

We disagree with Yellow's reading of *Checker Taxi.* The *Checker Taxi* court stated that the "key question" in the case was the following: "At what point should Checker reasonably have known that its excess insurance coverage would be implicated?" 158 Ill.Dec. at 231, 574 N.E.2d at 25. In the case at bar the district court has already answered that question: "Yellow's receipt of the complaint seeking damages that would penetrate the excess coverage ... informed Yellow that there was a sufficient likelihood of penetration of the excess coverage to require notification of Atlanta." Slip op. at 6, 1991 WL 4428. In other words, Yellow not only *should* have known that its excess insurance coverage might be implicated, it in fact *did* know. Therefore, it should have notified Atlanta upon receipt of the complaint.

Nothing in *Checker Taxi* persuades us to reach a different conclusion. In *Checker Taxi,* the only basis on which the insured could determine at the time the lawsuit was filed whether or not its excess coverage would be implicated was its own investigation and evaluation of the claim. By contrast, Yellow had not only its own evaluation, but also that of the plaintiff, in the form of the *ad damnum.* Checker had no information analogous to the *ad damnum* in the present case until Checker received a settlement demand that exceeded the amount of its primary coverage, at which time it notified its excess insurers of the suit against it. In fact, the *Checker Taxi* court suggested that if Checker had not informed Atlanta at that point then its action might have been unreasonable:

> [N]either occurrence of the accident nor the filing of the wrongful death action ... triggered an absolute duty at that time to give notice of potential claim under the excess policy. The results of the pre-trial conference, however, *changed the picture* and Checker realized that notice to its excess insurance carriers was *necessary.*

158 Ill.Dec. at 231, 574 N.E.2d at 26 (emphasis added). Similarly, whatever Yellow's initial evaluation of the damages to Watson, the *ad damnum* requesting damages in excess of the amount of Yellow's primary coverage "changed the picture" and made notice to Atlanta necessary.

This conclusion is supported by another Illinois appellate decision, *Brownlee v. Western Chain Co.,* 74 Ill.App.3d 804, 30 Ill.Dec. 479, 393 N.E.2d 515 (1979), on which the *Checker Taxi* court relied. In *Brownlee,* Midland Insurance Company (Midland) had issued to Western Chain Company (Western) an excess insurance policy that included the following notice provision: "Whenever the Insured has information from which the Insured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which ... is [sic] likely to involve this policy, notice shall be sent to [Insurer] as soon as practicable." *Id.,* 30 Ill.Dec. at 480, 393 N.E.2d at 516. Western's president received a summons informing him that suit had been filed against Western in another jurisdiction without stating the amount de-

manded. As it turned out, the *ad damnum* was in excess of Western's primary coverage, a fact that Western could easily have discovered. Western, however, took no action whatsoever, and did not inform Midland of the suit until after a default judgment had been entered for the amount of the *ad damnum*.

The Illinois appellate court held that Western had not breached the notice provision. The court found that the provision referred to the actual knowledge of the insured, and concluded that "[h]ere, ... actual knowledge of the *ad damnum* was not disclosed by the ... summons and ... the summons itself was insufficient, in itself, to raise the specter of excess liability." *Id.*, 30 Ill.Dec. at 484, 393 N.E.2d at 520. The clear implication is that, had Western been aware of the *ad damnum* in the complaint, Western would have had actual knowledge that the occurrence was "likely to involve" the excess insurance policy. Western would therefore have been required to notify Midland under the terms of the policy. Yellow clearly was aware of the *ad damnum* in Watson's complaint. The district court did not err in holding that Yellow was therefore required to notify Atlanta under the terms of its excess insurance policy.

## III.

The parties argue at some length about whether an excess insurer is required to show that it was prejudiced by its insured's breach of a notice provision in order to avoid liability. We need not reach this issue, however, because the district court found no factual dispute that Atlanta had been prejudiced by Yellow's late notice, and Yellow presents no basis for finding such a dispute on appeal.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.